# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROB JUSZCZAK CONSTRUCTION,**
**Employer Below, Petitioner**

**FILED**
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-16**          (JCN: 2021004229)

**JOHN JUSZCZAK,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner Rob Juszczak Construction ("the employer") appeals the December 10, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent John Juszczak ("the claimant") filed a response.[1] The employer did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's orders, which denied the addition of right shoulder strain, left shoulder strain, traumatic arthropathy of both shoulders, and right shoulder rotator cuff tear to the claim as compensable conditions.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On January 13, 2020, the claimant was injured while working for the employer, when an excavator swung and hit him, throwing him onto the ground from the back of a truck. The claimant was seen at the University of Pittsburgh Medical Center on the day of the injury, and he was diagnosed with extensive bilateral rib fractures. The claimant filed an Employees' and Physicians' Report of Occupational Injury or Disease dated July 13, 2020, indicating that he injured his ribs when he was struck by an excavator at work.[2]

---

[1] The employer is represented by Jeffrey B. Brannon, Esq., and Jane Ann Pancake, Esq. The claimant is represented by M. Jane Glauser, Esq.

[2] The claim administrator issued an order dated July 16, 2021, holding the claim compensable for multiple rib fractures. By Office of Judges' ("OOJ") Decision dated July 12, 2022, bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome were added as compensable diagnoses in the claim. By Memorandum Decision dated November 18, 2022, this Court affirmed the OOJ's Decision.

1

A CT angiograph of the claimant's neck performed on January 13, 2020, revealed no evidence of traumatic arterial injury involving the major cervical arteries, two focal areas of severe stenosis involving the V4 segment of the left vertebral artery, and a redemonstration of rib fractures with subcutaneous emphysema. A CT scan of the claimant's cervical spine performed on January 13, 2020, revealed no acute cervical spine fracture or dislocation and acute nondisplaced bilateral first rib head fractures. An x-ray of the claimant's chest taken on January 13, 2020, revealed multiple acute rib fractures. A CT scan of the claimant's abdomen and pelvis performed on January 13, 2020, revealed multiple bilateral rib fractures, no pneumothorax, trace right pleural effusion/hemothorax, small upper chest wall subcutaneous emphysema, and no acute traumatic findings in the abdomen or pelvis.

Frank Grisafi, M.D., examined the claimant on April 14, 2020, for complaints of cervical pain radiating into his shoulder and pain and numbness in his right upper extremity following a work injury. The claimant fractured multiple ribs as a result of the accident and developed symptoms radiating down both arms. At the time of the visit, the claimant complained of constant numbness and tingling in the ulnar two digits of his right upper extremity and extending into his forearm. He also reported weakness in his hands and reduced grip strength. A cervical MRI showed broad-based disc bulging causing central stenosis and severe bilateral neuroforaminal narrowing at C5-C6 and C6-C7, while an upper extremity EMG revealed bilateral carpal tunnel syndrome. Dr. Grisafi believed the claimant had ulnar nerve compression at the wrist or elbow, and he recommended a repeat upper extremity EMG/NCV study to further evaluate the claimant's pathology.

On June 4, 2020, the claimant made a telephonic statement to the claim administrator indicating that he sustained injuries to his ribs and both upper extremities when he was struck by an excavator at work on January 13, 2020. The claimant stated that he was diagnosed with ten broken ribs and developed numbness in both arms following the injury.

The claimant underwent an initial physical therapy ("PT") evaluation from Summit PT on September 28, 2020. The claimant presented with a diagnosis of cervical radiculopathy and thoracic pain. The claimant reported that he had suffered nine rib fractures after being struck by an excavator and was crushed against a truck. The claimant stated that, following the injury, he developed tightness, numbness, and tingling in his hands, stiffness in his wrists, and pain behind his right shoulder. The claimant reported that he was later diagnosed with carpal tunnel syndrome ("CTS"), possible cubital tunnel syndrome, thoracic outlet syndrome, and a brachial plexus injury. A physical examination revealed moderate impairment in external and internal rotation in both shoulders. The therapist noted that the right scapula was anteriorly tilted with posterior cuff atrophy and increased medial border winging.

2

A record from Summit PT dated November 11, 2020, indicated that the claimant continued to complain of a tingling sensation in his hands, tightness along the medial right hand, and pain behind the right shoulder with certain movements. A physical examination revealed moderate impairment in right and left shoulder external rotation, and moderate impairment with right shoulder internal rotation. The therapist noted that the claimant remained limited with overhead shoulder mobility.

William Donaldson, M.D., evaluated the claimant on April 20, 2021. The claimant reported an onset of persistent right upper extremity numbness after being hit by an excavator at work. Dr. Donaldson noted that the claimant had undergone multiple EMG's with varying results. Dr. Donaldson opined that imaging studies of the claimant's cervical spine revealed degenerative changes and were not very impressive. Dr. Donaldson referred the claimant to a hand specialist to assess for a possible peripheral versus brachial plexopathy.

On May 20, 2021, the claimant was evaluated by Chuan Fang Jin, M.D. The claimant complained of pain in his right shoulder blade and upper back and numbness and tingling in his hands. Dr. Jin's impression was a healed crush injury with multiple rib fractures, right hand numbness, and preexisting degenerative arthrosis of the spine with electrodiagnostic evidence of bilateral radiculopathy. Dr. Jin opined that the claimant had not yet reached maximum medical improvement ("MMI") as there was still room for improvement in his symptoms and function. Dr. Jin recommended repeat x-rays to evaluate the status of the claimant's condition, a neurological or orthopedic consultation, and PT.

The claimant underwent an upper extremity EMG on September 16, 2021, revealing electrodiagnostic evidence of bilateral median mononeuropathy at the wrist and bilateral ulnar mononeuropathy at the elbow. There was no evidence of thoracic outlet compression, a brachial plexus lesion, or cervical radiculopathy.

On February 28, 2022, Michael Singh, M.D., examined the claimant, who reported pain in his shoulders, arms, and hands, and tingling/numbness in his hands. The claimant reported an immediate onset of neurologic symptoms after sustaining blunt trauma to his chest, shoulders, arms, and neck following a work injury in January of 2020. Dr. Singh diagnosed the claimant with blunt trauma to the chest, shoulders, arms, and neck, causing immediate neurologic symptoms. He recommended PT, a neurology consult, and an MRI of the right and left plexus.

The claimant followed up with Dr. Singh on June 20, 2022. The claimant complained of pain, tingling, and numbness in his shoulders, arms, and hands, and difficulty driving. He reported no issues prior to the work injury. Dr. Singh believed the claimant was suffering from chronic musculoskeletal pain. Dr. Singh noted that the claimant's range of motion had improved with PT, and he recommended additional PT.

On September 23, 2022, the claimant was seen by Erek Lam, M.D., for a second opinion. The claimant complained of hand numbness in the fourth and fifth digits of both hands and mild weakness in both hands. The claimant denied any neurological symptoms prior to his work injury. Dr. Lam's assessment was bilateral ulnar neuropathy, bilateral carpal tunnel syndrome, and a history of traumatic injury. Dr. Lam recommended that the claimant see an orthopedic surgeon for treatment of his bilateral ulnar neuropathy and carpal tunnel syndrome.

By correspondence dated February 28, 2024, the claimant's counsel requested that the claimant be referred to Albert Lin, M.D., a shoulder specialist, based upon a February 27, 2024, letter from Robert Kaufmann, M.D., wherein he requested that the claimant be referred to Dr. Lin for further treatment. The claim administrator issued an order dated March 15, 2024, denying authorization for a referral to a shoulder specialist, Dr. Lin, based upon a finding that the request was neither medically necessary nor reasonably required to treat a compensable condition. The claimant protested this order.[3]

On March 19, 2024, Marcus Cervantes, M.D., evaluated the claimant. At the time of Dr. Cervantes' evaluation, the claimant complained of pain in both hands, both elbows, and his right shoulder. He also continued to complain of numbness and tingling in the bilateral fourth and fifth digits. Based upon his physical examination of the claimant and a review of the available medical records, Dr. Cervantes found the claimant to be at MMI and in need of no further treatment. Dr. Cervantes noted that the claimant's treating surgeon, Dr. Kaufmann, had not recommended any more treatment for the right or left upper extremity.

The claimant began treating with Damian Rispoli, M.D., on July 8, 2024. The claimant presented with complaints of right greater than left shoulder pain, and he reported an acute onset of bilateral shoulder pain following a work injury. Dr. Rispoli noted that, when asked to point to the area of maximal tenderness, the claimant pointed to the posterior inferior aspect of his right shoulder and a lateral subacromial location in his left shoulder. X-rays of the claimant's shoulders performed on July 8, 2024, revealed enthesopathic changes to the greater tuberosity bilaterally and rim osteophyte formation on the right greater than left. The assessment was bilateral shoulder pain. Dr. Rispoli noted that the claimant had radiographic evidence of rotator cuff pathology with superior migration on the right and arthritic changes bilaterally, and he recommended PT for rotator cuff rehabilitation, range of motion, scapular rehabilitation, and posterior capsular stretching.

---

[3] On February 14, 2025, the Board affirmed the claim administrator's order, noting that the claimant's right shoulder is not a compensable component in the claim. By Memorandum Decision dated October 24, 2025, this Court affirmed the Board's order. *See Juszczak v. Rob Juszczak Construction*, No. 25-ICA-106, 2025 WL 2993720 (W. Va. Ct. App. Oct. 24, 2025) (memorandum decision).

An MRI of the claimant's right shoulder was performed on September 5, 2024, revealing chronic full-thickness tearing of the supraspinatus retracted to the level of the glenoid with chronic moderate muscular atrophy, moderate osteoarthrosis, and suspected tendinopathy of the proximal biceps without evidence of tearing. The claim administrator issued an order dated September 5, 2024, which denied authorization for an MRI of the right shoulder based upon a finding that the request was neither medically necessary nor reasonably required to treat a compensable condition. The claimant protested this order.

On September 9, 2024, the claimant followed up with Dr. Rispoli to discuss the MRI findings. Dr. Rispoli noted that the claimant's right shoulder MRI showed early degenerative changes consistent with early rotator cuff arthropathy and a tear of the right supraspinatus tendon extending from the anterior infraspinatus to the upper subscapularis with significant atrophy in the supraspinatus. Dr. Rispoli assessed the claimant with rotator cuff arthropathy of the right shoulder, a right shoulder rotator cuff tear, right biceps tendinitis, and arthritis of the left acromioclavicular joint. Dr. Rispoli recommended a right shoulder steroid injection. The second treatment recommendation was arthroscopic partial versus complete repair of the right shoulder rotator cuff pathology and biceps tenotomy with open subpectoral biceps tenodesis and likely distal clavicle resection. The last treatment option was a reverse total shoulder arthroplasty. Dr. Rispoli opined that the claimant likely had some degenerative changes prior to his compensable injury, however, he noted that his shoulder was completely asymptomatic prior to his injury. The claimant saw Dr. Rispoli again on September 30, 2024, for a right shoulder steroid injection.

The claim administrator issued an order dated October 8, 2024, denying authorization for a right shoulder subacromial injection based upon a finding that the request was neither medically necessary nor reasonably required. The claimant protested this order.

On March 31, 2025, Dr. Rispoli examined the claimant and noted that he had developed an acute onset of bilateral shoulder pain following the compensable injury, and the pain had persisted since the injury. Dr. Rispoli noted that the claimant's shoulders were pain free prior to the compensable injury. The claimant reported that his pain failed to improve with a home PT program. The claimant further reported that he had received an injection in his right shoulder that provided significant pain relief. Dr. Rispoli opined that imaging evidence of the claimant's right shoulder showed early rotator arthropathy, a tear of the right supraspinatus tendon with significant atrophy, age-related degenerative changes in the labrum, a longitudinal tear in the biceps tendon with thickening and significant fluid, and AC joint arthrosis. Dr. Rispoli assessed the claimant with rotator cuff arthropathy of the right shoulder and right shoulder pain. Dr. Rispoli requested authorization for a repeat right shoulder injection.

5

By order dated March 31, 2025, the Board reversed the claim administrator's order denying the claimant's request for cortisone injection of the right hand and wrist. By order dated April 23, 2025, the claim administrator approved the claimant's request to change his treating physician to Dr. Rispoli. By correspondence dated May 7, 2025, the claimant's counsel requested that the claimant's bilateral shoulders be added as compensable components in the claim.

The claimant followed up with Dr. Rispoli on June 2, 2025, for bilateral carpal and cubital tunnel syndrome. The claimant reported that he continued to complain of right-sided numbness and tingling with right-sided weakness and pain at the base of his thumb. The claimant further reported having tried extensive PT and occupational therapy without improvement. Dr. Rispoli diagnosed the claimant with status post transposition of nerve, status post bilateral CTS release, and arthritis of the radiocarpal joint of the right wrist. Dr. Rispoli requested authorization for an EMG of the left upper extremity and a radiocarpal injection.

On July 5, 2025, Bruce Guberman, M.D., submitted a Diagnosis Update requesting that sprain of right shoulder, sprain of left shoulder, traumatic arthropathy of both shoulders, and right shoulder rotator cuff tear be added to the claim as compensable conditions. Dr. Guberman completed a file review report dated July 9, 2025. After reviewing the claimant's medical records, Dr. Guberman found that the claimant was injured on January 13, 2020, when he was crushed between a piece of heavy equipment and a truck. Dr. Guberman noted that the compensable injury resulted in trauma to the posterior thoracic area, especially on the right side, and x-rays showed multiple bilateral rib fractures over the right scapular area of the right shoulder. Further, Dr. Guberman noted that the claimant was diagnosed with bilateral CTS and bilateral cubital tunnel syndrome and underwent surgery for those conditions. Dr. Guberman found that the claimant continued to have persistent symptoms in his right shoulder following surgery, but he had no symptoms in his right shoulder prior to the compensable injury. Dr. Guberman noted that a right shoulder MRI performed in September 2024 showed a chronic full-thickness tear of the right supraspinatus muscle and mild osteoarthrosis and degenerative changes in both shoulders.

Dr. Guberman opined, to a reasonable degree of medical certainty, that the claimant's degenerative changes seen in the claimant's bilateral shoulders could be explained, at least in part, by the compensable injury, as four and a half years is long enough to produce posttraumatic arthropathy. Dr. Guberman noted that the claimant's injuries and persistent right shoulder symptoms cannot be explained by radiculopathy, CTS, or cubital tunnel syndrome, and the medical evidence indicates that he suffered an injury to his right shoulder, including a rotator cuff tear. Dr. Guberman stated that, although the claimant's right shoulder injury might be superimposed upon pre-existing degenerative changes, his shoulders were asymptomatic prior to the work injury. Dr. Guberman opined that injuries

6

to both of the claimant's shoulders and the claimant's right shoulder rotator cuff were causally related to the compensable injury. Further, Dr. Guberman opined that the claimant's bilateral shoulder degenerative changes were at least partly related to the compensable injury. Dr. Guberman also opined that the claimant's work injury resulted in bilateral shoulder contusions, bilateral shoulder sprains, a right rotator cuff tear, and aggravation and/or precipitation of degenerative changes. Finally, Dr. Guberman opined that the requests for additional PT and injections for the bilateral shoulders were directly related and medically necessary for treatment of the compensable injury.

Galen Sanderson, M.D., evaluated the claimant on October 3, 2025. Dr. Sanderson opined that the claimant's multiple rib fractures had healed without long term sequelae. Dr. Sanderson stated that, given the claimant's continued complaints of numbness and tingling in both upper extremities following CTS and cubital tunnel release surgeries, an NCS/EMG of the left upper extremity would help to further evaluate and assess the continued symptoms. Dr. Sanderson noted that he had been given no diagnostic imaging evidence to review regarding the claimant's shoulders, but that the claimant did not have any objective evidence on physical examination of shoulder dysfunction. Dr. Sanderson stated that, based upon the lack of records available, he was unable to state that the claimant sustained an injury to his shoulders as a result of the work injury of January 13, 2020, but if additional records were made available to him, he would reconsider his opinion.

On October 30, 2025, Dr. Guberman completed an addendum report after reviewing Dr. Sanderson's report of October 3, 2025. Dr. Guberman opined that there are significant findings indicating that the claimant suffered injury to both shoulders due to the compensable injury. Dr. Guberman noted that Dr. Sanderson did not have all the records related to the shoulders, including most of the records from Dr. Rispoli and the MRI report of his right shoulder. Dr. Guberman opined, to a reasonable degree of medical certainty, that the claimant suffered sprains of both shoulders, traumatic arthropathy of both shoulders, and right shoulder rotator cuff tear as a result of the compensable injury.

On December 10, 2025, the Board reversed the claim administrator's orders that denied the addition of right shoulder strain, left shoulder strain, traumatic arthropathy of both shoulders, and right shoulder rotator cuff tear to the claim as compensable conditions. The Board found that the claimant established by a preponderance of the evidence that he sustained compensable injuries to both shoulders. The employer now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the
> Workers' Compensation Board of Review or remand the case for further

7

proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

The employer argues that, under West Virginia Code of State Rules § 85-20-6.1 and § 85-20-6.6, only a treating physician of record may submit a Diagnosis Update.[4] The employer further argues that the request to add "bilateral shoulders" was properly denied as that is not a specific condition that could be held compensable. The employer also argues that Dr. Guberman is not the claimant's treating physician and, further, that his Diagnosis Update is inconsistent with his report. Finally, the employer argues that the claimant began requesting treatment for the shoulder four years after the compensable injury, and those requests were properly denied.

The Supreme Court of Appeals of West Virginia ("SCAWV") held, in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent

---

[4] West Virginia Code of State Rules § 85-20-6.1 provides, "[e]ach injured worker selects a treating physician of record who will treat the injured worker and be responsible for coordinating all subsequent health care. The treating physician of record may be a medical doctor, osteopath, podiatrist, or chiropractor."

West Virginia Code of State Rules § 85-20-6.6 provides, "[i]t is the responsibility of the treating physician to notify the Commission, Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, of the injured worker's most accurate and current condition."

that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3.

The SCAWV clarified its position in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), holding:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id.* at 294, 879 S.E.2d at 781, syl. pt. 5.

Here, the Board found that the weight of the medical evidence establishes that the claimant sustained injuries to both of his shoulders as a direct result of the January 13, 2020, workplace accident, causing a right shoulder strain, a left shoulder strain, traumatic arthropathy of both shoulders, and a right shoulder rotator cuff tear. The Board noted that both of the claimant's shoulders were impacted during the compensable accident, and that the impact was sufficient to cause injury. Further, the Board noted that the claimant developed persistent bilateral shoulder symptoms as a direct result of the compensable event, and his shoulders were asymptomatic prior to the compensable injury. The Board found that the record supports that the mechanism of injury was of sufficient severity to have caused a sprain-type injury to the claimant's shoulders, and the record contains diagnostic imaging evidence supporting the diagnoses of traumatic arthropathy in both shoulders and a right shoulder rotator cuff tear. The Board noted that, "[a]lthough the claimant may have had some degree of bilateral shoulder arthropathy prior to the compensable injury, both Dr. Rispoli and Dr. Guberman opined that the compensable injury caused the previously asymptomatic arthropathic condition to become persistently symptomatic." The Board further found that Dr. Guberman specifically opined that the right shoulder rotator cuff tear was causally related to the compensable injury, and that there is no evidence that the right shoulder rotator cuff tear preexisted the compensable injury.

In regard to Dr. Sanderson's report dated October 3, 2025, the Board noted that Dr. Sanderson was not provided with a copy of the right shoulder MRI study or any of Dr.

Rispoli's medical records. Thus, the Board found that Dr. Sanderson could not offer an accurate opinion on the claimant's bilateral shoulder pathology, and his opinion is unreliable. In contrast, the Board found that Dr. Guberman's opinion regarding the compensability of the claimant's bilateral shoulder pathology is reliable. Analyzing the claim under *Gill* and *Moore*, the Board found that the accident caused the claimant's preexisting arthritic condition to become symptomatic and disabling, resulting in a discrete new diagnosis of traumatic arthropathy of both shoulders.

We note that the employer has cited many cases that, it alleges, support the argument that only a treating physician may make a request for diagnoses to be added to a claim. After a review of the relevant case law, we do not find support for this argument. We note that in *Huntington Alloys Corp. v. Cassady*, No. 16-0568, 2017 WL 1788940, at \*3 (W. Va. May 5, 2017) (memorandum decision), the SCAW held that "West Virginia Code of State Rules § 85–20 does not prohibit the submission of a request for the addition of a compensable condition by the claimant or the claimant's representative." The SCAWV noted that the claim administrator was aware of the claimant's diagnosis and had been provided with medical records that confirmed the diagnosis. See also *Gasvoda v. Murray American Energy, Inc*., No. 22-ICA-108, 2023 WL 1463708, at \*5 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision), *aff'd*, No. 23-143, 2024 WL 3982704 (W. Va. Aug. 27, 2024) (memorandum decision) (rejecting the employer's argument that only a treating physician may request a diagnosis update). Finally, we note that in *Moore*, the SCAWV cautioned that elevating "form over substance" violates West Virginia Code § 23-1-1(b) (2007) which provides that it is the "intent of the Legislature that this chapter be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers[,] ... and workers' compensation cases shall be decided on their merits[.]" *Moore*, 247 W. Va. at 299, 879 S.E.2d at 786. Finding no substantive deficiency with the diagnosis request, we decline to rule that the form or manner in which the diagnosis request was made in this case was improper.

We further find no merit in the employer's argument that diagnoses related to the shoulder should not be added to the claim because treatment was requested four years after the compensable injury, and treatment was initially denied. In *Juszczak v. Rob Juszczak Construction*, No. 25-ICA-106, 2025 WL 2993720 (W. Va. Ct. App. Oct. 24, 2025) (memorandum decision), the claimant's treatment was denied because, at the time, there were no compensable conditions related to the shoulders. However, as this Court specifically stated in the decision, the claimant was not precluded from seeking to add additional conditions to the claim and request authorization for treatment of any conditions added. We also note that the Board found Dr. Guberman's opinions credible, and that Dr. Guberman noted that four years is enough to develop post traumatic arthritis, and in any case, Mr. Juszczak's shoulders were asymptomatic prior to the compensable injury.

Finally, we find no merit in the employer's argument that Dr. Guberman's report is inconsistent with the Diagnosis Update submitted. After review, we find that the requested diagnoses are stated in both documents and that Dr. Guberman associated all requested diagnoses with the compensable injury.

Additionally, given that the diagnosis of "bilateral shoulders" was not added to the claim, we decline to address the employer's related arguments. Upon review, we conclude that the Board was not clearly wrong in finding that the claimant established by a preponderance of the evidence that he sustained a right shoulder strain, a left shoulder strain, traumatic arthropathy of both shoulders, and a right shoulder rotator cuff tear as a result of the compensable injury. As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's orders.

Accordingly, we affirm the Board's December 10, 2025, order.

Affirmed.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White